**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

STEWART L. SEA,

                            **Plaintiff,**

-vs-                                            **Case No.  6:04-cv-948-Orl-JGG**

JO ANNE B. BARNHART,
Commissioner of Social Security,

                            **Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Stewart L. Sea ["Sea"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

On June 2, 2000, Sea filed claims for disability insurance benefits, claiming disability as of March 24, 2000. R. 58-60. On February 2, 2002, the Honorable Apolo Garcia, Administrative Law Judge ["ALJ"], held a hearing on Sea's claim in Orlando, Florida. R. 187-207. Sea testified, and his attorney, Adam Sacks, appeared with him at the hearing.

On March 28, 2002, the ALJ ruled that Sea was not entitled to benefits. R. 12-21. Following a review of the medical and other record evidence, the ALJ found that Sea had severe impairments, but did not have an impairment or combination of impairments that met or equaled a listed impairment. R. 20, Findings 3-4. The ALJ also found that Sea's testimony regarding his limitations

was essentially credible, but not persuasive of a disabling impairment.  R. 20, Finding 5.  Further, the

ALJ determined that Sea retained the RFC to perform a reduced range of light work.[1]  R. 20, Finding

7.  The ALJ concluded that Sea's RFC did not preclude him from returning to his past relevant work.

R. 20, Findings 8-9.  Accordingly, the ALJ concluded that Sea was not disabled.  R. 21, Finding 10.

Sea timely appealed the ALJ's decision to the Appeals Council.  R. 11.  Finding no error or

abuse of discretion, the Appeals Council denied review on April 30, 2004.  R. 2-6.  On October 29,

2003, Sea timely appealed the Appeals Council's decision to the United States District Court for the

Middle District of Florida.  Docket No. 1.  On November 22, 2004, Sea filed a memorandum of law

in support of his appeal of the denial of review.  Docket No. 13.  On January 21, 2005, the

Commissioner filed a memorandum in support of her decision that Sea was not disabled.  Docket No.

15.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Sea assigns four errors to the Commissioner's decision: 1.) improperly evaluating Sea's RFC;

2.) disregarding Sea's subjective complaints of pain; 3.) failing to consider the impact of Sea's obesity

on his ability to work; and 4.) failing to consider Sea's combination of impairments.  Pl.'s Brief at 6 -

13.  The Commissioner responds that her decision was supported by substantial evidence and was

decided by proper legal standards.  The Commissioner asserts that: 1.) the ALJ properly determined

Sea's RFC; 2.) substantial evidence did not support Sea's allegations of disabling pain; 3.) the ALJ

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  If someone can do light work, the Commissioner determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

properly evaluated Sea's obesity; and 4.) the ALJ properly considered Sea's combination of impairments.  Def.'s Brief at 4 - 9.

### III.   THE STANDARD OF REVIEW

#### A.   Affirmance

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.**     **Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405 (g)(Sentence Four).   The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).   To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

-4-

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).   After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).

To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.

1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

**IV.   THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (i), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

**A.   Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v.* Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed

impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right. *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. *See Cowart*, 662 F.2d at 735 - 36. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Sea v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

    **D.**    **The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520 (©).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not

in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), ©). If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability. *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### E.   <u>Other Work</u>

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant

non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

## 1.   <u>Pain</u>

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other

evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423 (d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.   20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

### 2.   **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting

subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*;*

*Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

V.   **APPLICATION AND ANALYSIS**

    A.   **The Facts**

Born on July 6, 1937, Sea was sixty-four years old at the time of the ALJ's decision.[2]  R.  58. Sea has a Bachelor of Science degree in diesel technology, and his past relevant work experience includes work as a salesman in various industries.  R. 15, 193.  Sea claims an inability to work beginning March 24, 2000.  R. 58.

On March 12, 1999, Sea went to Michael W. Eden, M.D., for a follow-up of hypertension. Sea said that he consumed alcohol daily.  The assessment was hypertension, inadequately controlled. Dr. Eden prescribed medication and encouraged Sea to discontinue alcohol.  R. 132.  On June 9, 1999, upon referral from Dr. Eden, Sea went to Bert Laureano, M.D., for complaints of snoring.  Sea stated that he had snoring problems since 1991.  The impression was snoring disorder versus sleep apnea.

---

[2]He is now sixty-seven years old.

Dr. Laureano was going to obtain a copy of a prior sleep study conducted in 1991.  R. 133.  On July 7, 1991, Dr. Laureano was unable to obtain Sea's sleep study, and advised Sea to undergo a new study.  R. 129.

On November 16, 1999, Sea went to W. Clark Bailey, M.D., for complaints of right hip pain lasting several weeks.  He stated having a burning sensation in his posterior legs and buttocks and tenderness over the sciatic notch, but was able to bend over and touch his toes and had full range of motion.  Examination was unremarkable.  The impression was sciatic nerve irritation, and treatment consisted of a hot compress and medication.  R. 119.

On December 16, 1999, James M. Thompson, M.D., performed a sleep laboratory evaluation.  Sea stated that in his prior sleep evaluation, he was advised to refrain from drinking alcohol.  He also stated that he did not have any follow-up visits in the sleep center after the initial sleep study.  Sea reported being increasingly drowsy and having difficulty staying awake during the daytime.  He further stated that slept eight to ten hours per night, but did not feel well rested.  Sea also mentioned that he drank five or six beers every night.  On examination, Sea appeared short of breath even while sitting, and he breathed hard while walking.  The impression was daytime somnolence and likely obstructive sleep apnea.  Dr. Thompson noted Sea might be able to reduce the sleep apnea if he eliminated alcohol usage late at night.  He also noted that he did not find a history of excessive alcohol usage.  R. 120-21.

On January 5, 2000, Sea complained of intermittent back problems for three months, which occurred when he entered and exited cars at work.  Sea also complained of sharp pain radiating down his right leg to his knee.  R. 118.  On January 10, 2000, upon referral from Dr. Eden, Sea began

-14-

physical therapy.  Sea complained of pain in the right sacroiliac area, precipitated by the physical demands of his work.  On examination, Sea ambulated favoring the right lower extremity and stood with a significant anterior pelvic tilt.  There was notable muscle guarding in the lower lumbar area and hypomobility of the lower lumbar spine.  Lateral flexion was approximately 10% less motion to the left compared to the right.  Both directions were at least 25% restricted.  Rotation was minimal to no movement from the lumbar spine with compensatory motion that all occurred in the thoracic area. Passive hip rotation was 35 degrees on the right and 30 on the left, and external rotation was 20 on the right and 30 on the left.  Sacroiliac gapping test was positive on the right side for pain as well as decreased motion.  Palpation of bony landmarks elevated right posterior sacroiliac space as well as the right iliac crest.  The right anterior sacroiliac space was felt to be lower on the left side and more superficial and prominent compared to the right side.

The final assessment was restriction of the right SI joint, sacroiliac mal-alignment, loss of lumbar spine motion both actively and passively, limited hip rotation, and decreased abdominal strength and knowledge regarding principles of lumbar stabilization.  The therapist opined that physical therapy would correct the mal-alignment, but that Sea would have difficulty fully preventing his SI joint from displacing in the future due to the exertional demands of his job.  R. 108-09.

On January 19, 2000, Sea returned to physical therapy and complained of pain and soreness in right SI joint exacerbated from working.  Sea continued to have inflammation over the right SI joint.  Sea felt that the exertional demands of his job caused the inflammation.  The therapist noted that Sea's mal-alignment appeared to be corrected.  The therapist also noted that Sea needed to improve his abdominal and trunk strength. The plan was to continue therapy twice per week.  R. 117.

-15-

On January 21, 2000, Sea complained of pain only when standing in certain positions.  He had stiffness in the morning, but loosened up during the afternoon.  The assessment was palpable tenderness at the right SI joint, alignment deficits, and a need to improve abdominal/trunk control and strength.  R. 114.  On January 25, 2000, Sea complained of continuing pain and aches all over.  The therapist noted that Sea was deconditioned, which contributed to his symptoms.  The therapist also noted that continued improvement was expected if Sea continued exercises at home and in therapy.  Sea's alignment was normal.  R. 115.  On February 2, 2000, Sea reported improvement, although he had difficulty bending forward in the morning.  He also reported having severe pain for the first time in several days.  The therapist noted a visible improvement in Sea's overall posture, although Sea continued to have limitations in movement due to pain at the right sacroiliac joint.  R. 112.

On March 9, 2000, Sea reported back tenderness over the L-S area.  The diagnosis was hypertension, low back pain, hyperlipidemia, right SI strain, and sciatica.  R. 110-11.  On March 15, 2000, Sea returned to therapy.  He noted that he stopped coming to his therapy appointments because he thought he had improved, but the pain had shifted to the left side, and he was unable to stand.  R. 113. On March 17, 2000, Sea reported feeling slightly better, but complained of soreness and stiffness on the left side.  R. 102.  On March 23, 2000, Sea stated that his lower back was extremely sore and opined that his job was an aggravating factor.  R. 103.  The therapist agreed that Sea's job was aggravating his pain, and that taking some time off from his job may help.  The therapist did not find any mal-alignment during Sea's two prior therapy sessions.

On May 8, 2000, Sea was discharged from physical therapy because he had not returned for scheduled appointments since March 23, 2000.  From his initial session on January 10, 2000 to March

-16-

23, 2000, Sea went to therapy nine times. The diagnosis was right sacroiliac dysfunction. He had low back pain and difficulty working secondary to pain. R. 100.

On August 16, 2000, Sam Ranganathan, M.D., performed a consultative examination for disability purposes. Sea reported having had back pain since the Fall of 1999. Sea reported a history of degenerative joint disease of the lumbosacral spine with a pinched nerve. He could sit when he did not have pain, and standing time varied with back pain. On examination, the thoracolumbar spine had full range of motion, except that forward flexion was limited to by five degrees. Motor system strength of the right thigh flexion was 4/5, but the others were normal. He had spasms and tenderness in the lumbosacral area. Right hip range of motion was slightly limited. Flexion was limited by ten degrees, abduction restricted by five degrees, adduction reduced by two degrees, internal rotation diminished five degrees, and external rotation was degraded five degrees. Other than mild spasm and tenderness in the lumbosacral spine, the examination was normal. Sea's hand grip was 5/5 and equal bilaterally. Gross/fine manipulations were well preserved; sensory system was intact; and reflexes were equal and normal bilaterally. There was mild spasm and tenderness in the lumbosacral spine area, but straight leg raise was negative in both legs. Dr. Ranganathan found no abnormality of gait or station, and he imposed no work- related restrictions. The impression was history of degenerative joint disease of the lumbar spine and right hip, obesity, and hypertension. R. 142.

On August 31, 2000, a state agency physician performed a Physical Residual Functional Capacity assessment. The physician determined that Sea could lift/carry 20 pounds occasionally, 10 pounds frequently, sit/stand/walk for six hours, had unlimited push/pull ability, could frequently perform all postural activities, and was unlimited in all other respects. R. 145-52.

On January 23, 2001, Sea went to Leslie Smith, D.O., for complaints of persistent joint pain relieved by Celebrex.  The diagnosis was hypertension, hyperlipidemia, and arthritis.  Dr. Smith advised Sea to stop drinking.  R. 162.  On January 28, 2001, state agency physician David Z. Kitty, M.D., performed a Physical Residual Functional Capacity assessment.  Dr. Kitty determined that Sea could lift/carry 50 pounds occasionally, 25 pounds frequently, sit/stand/walk for six hours, had unlimited push/pull ability, and was unlimited in all other respects.  R. 153-60.

On February 1, 2001, Sea returned to Dr. Smith for complaints of arthritis pain, back and hip pain, and a pinched nerve.  Examination revealed decreased range of motion of the right hip due to pain.  Dr. Smith prescribed Celebrex for pain.  R. 172.  On March 1, 2001, Sea returned for a follow-up.  He reported that he felt "great" due to the Celebrex.  During examination, Sea experienced mild pain when he attempted to lie down.  The assessment was arthritis and hypertension.  Dr. Smith continued Sea on Celebrex.  R. 170-71.  On May 3, 2001, Sea had muscle spasms, as well as sciatica on his left side for two weeks.  R. 168-69.  On June 1, 2001, Sea had a follow-up visit with Dr. Smith.  The assessment was hypertension and increased lipids.  R. 167.  On June 6, 2001, Sea's cholesterol and blood pressure had decreased.  R. 166.  Dr. Smith continued to treat Sea until at least January 28, 2002.  R. 161-66.

**B.    The Analysis**

**1.    The ALJ Properly Evaluated Sea's RFC**

Sea asserts that the ALJ erred in determining that Sea could perform light work.  Specifically, Sea contends that the ALJ relied on an opinion by a state agency physician, but failed to include in his RFC assessment the physician's conclusion that Sea could only "frequently" climb, balance, stoop, kneel, crouch, crawl.  This argument is meritless.

-18-

At the hearing, Sea testified that he suffers from pain in his neck ("[m]y neck is like an organ grinder constantly"), knees, and back, numbness in his arms, and pain-related sleeplessness (even with a sleeping pill). R. 195-96. The evidence does establish that Sea suffers from degenerative joint disease, sciatica, slightly reduced range of motion of the back and hip, hyperlipidima, and hypertension. However, the evidence shows no disabling pain or functional limitations. In January 2000, Sea was diagnosed with sacroiliac mal-alignment, loss of lumbar spine motion, and limited hip rotation. However, Sea's therapist opined that therapy would correct Sea's mal-alignments. Indeed, later that month, the therapist noted that Sea's mal-alignment appeared to be corrected. In February 2000, the therapist noted visible improvements in Sea's posture, although he continued to have reduced range of motion due to pain at the right sacroiliac joint. Sea continued to attend therapy for his joint pain through March 2000, but was discharged in May 2000 for non-compliance.

In August 2000, Dr. Ranganathan, a one-time consultative examining source, determined that Sea had slightly decreased range of motion of the thoracolumbar spine, hip, and knee, but otherwise was within normal limits, and had no work-related limitations. Also in August 2000, a state agency physician determined that Sea could perform light work. In January 2001, another state agency physician determined that Sea could perform medium work.

Sea's medication successfully treated his pain. Sea began taking Celebrex for joint pain beginning about January 2001, and by March 2001, he stated "feeling great." From March 2001 until at least January 2002, Sea complained of joint pain on just one occasion (May 2001). At the hearing in February 2002, Sea reiterated that Celebrex had "made a big difference in my everyday life." R. 206. Indeed, Sea testified that he is able to drive without any problems (except occasional difficulty entering the car), has no problem grooming, bathing, or dressing (except for difficulty wearing socks

and tying shoelaces), and sweeps, mops, vacuums, goes grocery shopping, cooks, washes dishes, and does laundry.  R. 200-01.  In addition, in response to his attorney's question ("Supposing there was a job . . . sedentary in nature . . . .  Do you think you could perform a job like that?"), Sea surmised, "I probably could."  R. 203.

The ALJ accorded substantial weight to the state agency physician's opinion of August 2000 that Sea could perform light work.  Although the ALJ adopted most of the physician's conclusions as to functional limitations, the ALJ restricted Sea's RFC even beyond that determined by the state agency physician.  The agency physician had determined that Sea could sit for six hours and stoop frequently.  The ALJ, however, determined that Sea could sit intermittently for a total of just two hours, and stoop only occasionally.  Although the ALJ did not recite the physician's conclusions that Sea could "frequently" climb, balance, stoop, kneel, crouch, crawl, the evidence as a whole does not support those limitations.  Substantial evidence supports the ALJ's determination that Sea retained an RFC for light work and could return to his past relevant work.[3]

## 2. Substantial Evidence Does Not Support Sea's Allegations of Disabling Pain

Next, Sea contends that the ALJ erroneously discredited Sea's testimony about disabling pain. Specifically, Sea contends that the ALJ discredited his pain on the basis that Sea discontinued physical therapy (in March 2000) without considering Sea's explanation that he quit therapy solely because he could not afford it.  Sea is wrong.  The ALJ did not categorically reject Sea's testimony and

---

[3]Sea further argues that the ALJ erred by failing to include a "function by function" assessment of Sea's limitations.  This argument is meritless, as the ALJ properly assessed all of Sea's limitations that were supported by substantial evidence.

allegations.  The ALJ merely found Sea's overall allegations to be "essentially credible, but not persuasive."  R. 20, Finding 5.

Notwithstanding Sea's explanation that he could not afford to continue therapy, Sea apparently *could* afford to see his physician at least twelve times from January 2001 through January 2002 for various complaints.  The ALJ therefore did not err in concluding that, because of Sea's lack of attendance, it was "obvious" that his pain was not as severe as he alleged.  Moreover, as discussed above, substantial evidence shows no medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  Sea conceded that his pain was controlled by medication, and he was able to perform his normal activities of daily living.  Although the ALJ might have been more articulate in discrediting Sea's allegations of pain,[4] the record is adequate as to the credibility finding.

### 3.    The ALJ Properly Evaluated Sea's Obesity and Combination of Impairments

Finally, Sea contends that the ALJ failed to properly evaluate Sea's obesity, and did not consider his impairments in combination.  This argument is wrong.  The ALJ properly considered the evidence, and at the hearing, inquired about all of Sea's alleged impairments.  The ALJ determined that Sea had severe impairments, including degenerative joint disease of the lumbosacral spine and right hip with right-sided sciatica, obesity, hyperlipidemia, and hypertension.  Applying the impact of Sea's impairments, the ALJ concluded that Sea could perform light work.  In addition, the ALJ restricted Sea's RFC even beyond that determined by the state agency physician whose opinion the ALJ adopted.  Specifically, the ALJ limited Sea to occasional stooping, whereas the state agency

---

[4]At an April 2005 seminar hosted by the Federal Judicial Center, a former ALJ reported that the  Commissioner now expects each ALJ to hear and determine 45 cases per month —  a staggering number.

physician had found that Sea could stoop frequently.  Presumably, this limitation incorporated Sea's obesity.  Plainly, the ALJ incorporated Sea's combination of impairments into his RFC determination.

## VI.    CONCLUSION

For the reasons stated above, the decision of the Commissioner should be **AFFIRMED**.  The Clerk should enter a judgment.

DONE and ORDERED this 20th day of May, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R.  Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL                33602

The Honorable Apolo Garcia
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL              32817